UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| SPLIT VEIN COAL COMPANY, INC., | * | CHAPTER 11 |
| Debtor | * | |
| | * | CASE NO. 1:03-bk-2974 MDF |
| SPLIT VEIN COAL COMPANY, INC., | * | |
| Plaintiff | * | |
| | * | ADV. PRO. NO. 1:13-ap-00028 MDF |
| v. | * | |
| | * | |
| ELWOOD SWANK, | * | |
| Defendant | * | |
| | * | |
| v. | * | |
| | * | |
| VICTOR KOCUR, | * | |
| Intervenor | * | |
| | * | |

## OPINION HOLDING DEFENDANT IN CONTEMPT

Lawrence G. Frank ("Frank"), counsel for Split Vein Coal Company, Inc. ("Debtor") seeks an order holding Defendant, Elwood Swank ("Swank") in civil contempt for violating this Court's February 27, 2013 Order (the "February Order") directing Swank to provide information regarding the location and amount of certain funds paid to Swank as president and sole stockholder of Debtor. For the reasons set forth below, the Court grants Frank's motion.

### I. Background

On May 19, 2003, Debtor, a Pennsylvania corporation located in Northumberland County, filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Prior to the filing, Debtor had been engaged in the recovery, reprocessing, and sale of coal refuse. On January 11, 2007, Debtor instituted adversary proceeding number 1:07-ap-00006 MDF against Gilberton Coal Company, Inc. ("Gilberton") for damages related to the appropriation and conversion of

1

coal, title to which Debtor claimed. By Order dated December 11, 2009, this Court entered judgment in favor of Debtor in the amount of $639,685. That judgment was affirmed by the Third Circuit on July 20, 2012.

During the pendency of the Gilberton litigation, Victor Kocur ("Kocur") filed Proof of Claim No. 9 in the amount of $374,000 for post-petition services performed on Debtor's behalf. Kocur's services included efforts to extinguish a fire that burned within a culm bank on Debtor's property. Despite being an administrative claim, Kocur filed the claim as an unsecured claim and after the general claims bar date. An administrative claims bar date was never set in Debtor's case. According to Kocur, Frank and Swank assured Kocur that he would receive payment for his services following resolution of the Gilberton litigation.

Upon receipt of the proceeds from the Gilberton judgment, Frank made payment to Debtor's creditors. With the exception of Kocur, all creditors were paid in full. Frank and Swank admittedly chose to ignore Kocur's Proof of Claim as it had not been properly filed as an application for payment of an administrative claim. Frank instead paid the remaining funds, approximately $207,000 (the "Funds"), to Swank as "President and sole stockholder of Debtor." Neither Debtor's Plan of Reorganization nor this Court authorized such a distribution.

On December 19, 2012, Kocur filed an application for allowance of an administrative claim in the amount of $103,218.82 plus reasonable attorneys' fees. At this time, Frank informally asked Swank to return the money to be held in Frank's IOLTA account, pending resolution of Kocur's administrative claim. Swank refused to return the Funds. In response, Frank instituted the above-captioned adversary proceeding. At the same time, Frank filed a Motion for Preliminary Injunction to compel Swank to immediately return the Funds for possible

2

distribution to Kocur.

At a hearing held on February 27, 2013 on Frank's Motion for Preliminary Injunction in the adversary proceeding, Swank appeared and stated that only $150,000-$160,000 of the Funds remained in his control. When he was directed by the Court to identify the location of the funds, Swank stated, "I have them hid." He further stated that he understood the Court was holding him in contempt if he refused to reveal the location of the remaining funds. At the conclusion of the hearing, the Court issued an Order ("the February Order"), which provided as follows:

> ORDERED that within ten (10) days of the date of this Order, Defendant submit to this Court a written description of the location and the amount of the Funds in the custody or control of Defendant for *in camera* review by the Court; and it is
>
> FURTHER ORDERED that Defendant not transfer, expend, or otherwise dissipate the Funds, pending further Order of this Court; and it is
>
> FURTHER ORDERED that should Defendant fail to comply with any of the provisions set forth herein, Defendant shall be in contempt of court and the Court may impose sanctions to compel compliance with its Order, including the imposition of monetary sanctions and incarceration until the contempt is purged.

The February Order was served on Swank at RR #1, Drawer 2, Paxinos, PA 17860. A copy was also emailed to Swank's personal attorney, Frank Garrigan ("Garrigan") on April 30, 2013. To date, Swank has failed to provide the Court with any information regarding the Funds.

On April 3, 2013, Frank filed a Motion seeking an order holding Swank in contempt of the February Order. A hearing was held on April 30, 2013. Swank appeared via CourtCall. At the hearing, the Court noted that Swank's primary defense in refusing to return the Funds to Frank stemmed from his belief that they would be "lost to exorbitant attorney's fees." *See* Swank's Answer to the Complaint, Docket No. 26. The Court therefore recommended that

3

Swank remit the Funds to Garrigan, his personal attorney, to be held in escrow pending a decision on Kocur's claim. Swank responded that he would "think about it." The hearing on Frank's Motion for Contempt was continued to today, May 14, 2013. By email dated May 6, 2013, Garrigan informed the Court that Swank did not intend to turn over the Funds. Swank's refusal to turn over the Funds was reiterated on the record today.

On May 9, 2013, this Court issued an Order and Opinion approving Kocur's administrative claim in the reduced amount of $84,758.82. The Order directs Debtor to pay Kocur's claim on or before May 29, 2013.

## II. Discussion

A bankruptcy court has the authority to enforce compliance with a court order through imposition of civil contempt. *See* 11 U.S.C. § 105; Fed. R. Bankr. P. 9020; *In re Lands End Leasing, Inc.*, 220 B.R. 226, 233 (Bankr. D.N.J. 1998). Contempt must be proved by clear and convincing evidence that an order of the court was in effect and that the alleged contemnor knew of and failed to comply with the order. *Robin Woods, Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994); *Roe, et al. v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995). However, bankruptcy courts have the power to summarily determine contempt that occurs in the judge's presence. *See Chambers, v.NASCO*, 501 U.S. 32, 43 (1991) (quotations omitted). In civil contempt, fine and imprisonment are employed "as coercive sanctions to compel the contemnor to do what the law made it his duty to do." *Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 590 (1947) (citations omitted). Coercive sanctions include imposing a per diem fine and confining a contemnor

4

indefinitely until he complies with an affirmative command. *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828 (1994) (citation omitted).

Swank's only proffered excuse for his contemptuous behavior is that he never received notice of the February Order. The docket however indicates that the Order was mailed to Swank the same date upon which it was entered. Moreover, the Court verbally informed Swank at the February 27 hearing that he would be held in contempt if he refused to disclose the location of the funds, and he was reminded of the contents of the February Order at the hearing on April 30, 2013. A copy of the Order was also emailed directly to Garrigan. Thus, the Court finds that Swank has been provided numerous opportunities to comply with the Court's directive and has steadfastly refused to disclose the location and amount of the Funds.

### III. Conclusion

For the foregoing reasons, the Court finds that Swank is in contempt of Court and will impose the appropriate monetary and other sanctions as set forth in the accompanying order.

By the Court,

_Mary D. France_
Chief Bankruptcy Judge

Date: May 14, 2013